**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────

**D.A.B. AND M.B., INDIVIDUALLY AND ON**
**BEHALF OF D.B.,**                                   **12 Cv. 4325 (JGK)**

               **Plaintiffs,**                  <u>**OPINION AND ORDER**</u>

      **- against -**

**NEW YORK CITY DEPARTMENT OF**
**EDUCATION,**

               **Defendant.**
────────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, D.A.B. and M.B., bring this action on behalf of their son, D.B., pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.*, and New York Education Law § 4401 *et seq.*, against the New York City Department of Education ("the Department"). In an earlier decision, this Court granted summary judgment for the defendant dismissing the plaintiffs' challenge to the decision of the State Review Officer ("SRO"), leaving undisturbed the SRO's decision that the Department had offered D.B. a "free and appropriate education" ("FAPE") for the 2010-2011 school year. <u>D.A.B. v. New York City Dep't of Educ.</u>, 973 F. Supp. 2d 344, 363 (S.D.N.Y. 2013). The parties have now cross-moved for summary judgment on the plaintiffs' Section 504

claim, which was not argued by the parties at the time of the earlier decision.

For the reasons explained below, the plaintiffs' Section 504 claim is **dismissed without prejudice** for lack of subject matter jurisdiction.

I.

The Court has already set forth the facts and procedural background of this case in its prior opinion, familiarity with which is assumed.  See id. at 351-358. The following facts, taken from the administrative record and the submissions of the parties, are set forth because of their relevance to the Section 504 claim.  The facts are undisputed unless otherwise noted.

A.

D.A.B. and M.B. are the parents of D.B., a child classified with autism and apraxia of speech.[1]  (SRO Op. at 2; Tr. 780.) D.B. was approximately six years old at the time of the 2010-2011 school year at issue in this case.  (Independent Hearing Officer ("IHO") Op. at 4; Ex. 1 ("IEP") at 1.)

Consistent with New York State Public Health Law, the Department requires that all students be vaccinated before attending school, subject to certain exceptions.  N.Y. Pub. Health Law § 2164; (see Edmonds Decl. ¶ 2, Ex. 1.)  Parents that

---

[1] Apraxia of speech is a disorder characterized by severe motor planning difficulties, by which a person has trouble speaking correctly. (Tr. 360, 485, 508-09.) "Tr." refers to the transcript of the hearing before the IHO.

2

do not want their children to be vaccinated due to medical concerns may request an exemption by submitting a statement from a New York State physician. N.Y. Pub. Health Law § 2164(8); (see Edmonds Decl. ¶ 3, Ex. 2.)

The plaintiffs have claimed that they do not want D.B. to be vaccinated due to medical concerns. (Tr. 854-55.) Prior to the 2009-2010 school year, they requested an exemption from the Department's vaccination requirement by submitting a letter from Dr. Cecilia McCarton, a clinical pediatrician, stating that D.B. has a "history of adverse reactions" to vaccinations. (Tr. 854; Ex. 5.) The Department denied the request because it found no medical basis for the exemption. (Ex. 6.)[2] Prior to the 2010-2011 school year, D.B. still had not received the necessary vaccinations and the plaintiffs did not request an exemption. (Def.'s Statement of Undisputed Facts, ¶ 8; Pl.'s Resp. Def.'s Statement of Undisputed Facts, ¶ 8.)

The Individualized Education Program ("IEP") recommended by the Committee on Special Education ("CSE") proposed placing D.B. in a specialized class in a specialized school with a student/teacher/paraprofessional ratio of 6:1:1, along with several other support services. (IEP at 1-2.) On June 15,

---

[2] Exhibits with numbers refer to the defendant's exhibit appendix and exhibits with letters refer to the plaintiffs' exhibit appendix each of which was submitted to the Office of State Review. Exhibits with roman numerals refer to the IHO's exhibits that were submitted to the Office of State Review. Neither party challenges the exhibits.

2010, the plaintiffs sent a letter to the Department, through their attorney, in which they stated that they would be unilaterally placing D.B. at the McCarton Center, a non-public center in New York City which D.B. had attended the previous school year. (Ex. C.) The letter discussed the plaintiffs' failed attempts to receive an exemption from the vaccination requirement during the 2009-2010 school year. (Ex. C.) On June 16, 2010, the Department mailed D.B.'s parents a final notice of recommendation ("FNR") offering D.B. a classroom placement at P811M @ P149M ("P811M") that allegedly provided the services listed in the IEP. (Ex. 3.)

After receiving the FNR, D.A.B. visited P811M to observe the classroom and available services. (Tr. 345-50.) In a June 28, 2010 letter to the Department, she stated that the principal had told her that D.B. would require vaccination, which she stated would be "contrary to the advice of his physicians." (Ex. B.) D.A.B. also stated in the letter that the program was not appropriate for D.B. because he "requires one on one instruction" and "none was available." (Ex. B.)

On September 16, 2010, the plaintiffs filed a due process complaint notice requesting an impartial hearing and seeking reimbursement for the student's tuition at the McCarton Center for the 12-month 2010-2011 school year. (Ex. I at 6.) The due process complaint alleged several procedural and substantive

4

deficiencies with the IEP, including among other things that the 6:1:1 program, annual goals, and Behavioral Implementation Plan were inappropriate for D.B. (Ex. I at 1-6.) The due process complaint also argued that the IEP failed to recommend an appropriate placement because D.B. was rejected from the proposed placement due to his lack of vaccinations. (Ex. I at 3.)

During the due process hearing, D.A.B. explained that she did not approve of the placement because "a 6:1:1 at any school would not be appropriate," and that the school did not have several services that D.B. required. (Tr. 870.) She also testified that she had informed the CSE of the problem with D.B. receiving vaccinations. (Tr. 849.) However, the Department's psychologist, Kathy Kaufman, testified that the issue of D.B.'s vaccinations was not discussed during the CSE meeting, and neither the IEP nor the CSE minutes mentions any such discussion. (Tr. 303; Exs. 1, 2.)

B.

On April 1, 2011, the IHO issued an Interim Order dismissing the plaintiffs' claims that D.B. had been excluded from the proposed placement based on his lack of vaccinations. (See IHO Interim Op. at 6.) The IHO concluded that he lacked subject matter jurisdiction over this claim because it was "governed by the New York Public Health Law," so the "proper

5

forum for resolution" is an appeal to the New York State Commissioner of Education. (IHO Interim Op. at 7.)

Following the IHO's Interim Order, the due process hearings continued, and the IHO issued his final decision on December 1, 2011, in which he held that the Department failed to offer D.B. a FAPE for the 2010-2011 school year. (See IHO Op. at 21.) The plaintiffs did not appeal the Interim Order or any portion of the IHO's decisions to the SRO, and requested that the SRO uphold the IHO's final decision in its entirety. (SRO Op. at 6.) On March 5, 2012, the SRO reversed the IHO's December 1 decision, holding that the Department offered D.B. a FAPE for the 2010-2011 school year. (SRO Op. at 15.)

On June 1, 2012, the plaintiffs filed a complaint in this Court. On September 16, 2013, the Court granted summary judgment for the defendants dismissing the plaintiffs' IDEA claim and upholding the SRO's decision. D.A.B., 973 F. Supp. 2d at 363. In their original summary judgment motions, the parties focused their arguments on the IDEA claims and did not discuss the plaintiffs' Section 504 claim. Following the Court's decision, the parties submitted cross-motions for summary judgment on the plaintiffs' Section 504 claim.

II.

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a

6

civil action in federal or state court." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 112 (2d Cir. 2004); 20 U.S.C. § 1415(i)(2)(A). "Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction." Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 246 (2d Cir. 2008). Even if the plaintiff requests relief that is unavailable under the IDEA, a court looks to the "theory behind the grievance" to determine if there must be IDEA exhaustion. Id. (quoting Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 486 (2d Cir. 2002)). Thus, "potential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act)." Polera, 288 F.3d at 481; 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under . . . title V of the Rehabilitation Act of 1973 . . . except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.")

7

In this case, the Rehabilitation Act claim parallels the IDEA claim.  Under both statutes, the plaintiffs claim that they are entitled to compensation for the cost of private education.  Under the IDEA claim, the plaintiffs claim that the Department failed to provide DAB with a FAPE and therefore they were justified in placing him in a private school.  Under the Rehabilitation Act claim, the plaintiffs claim that they are entitled to reimbursement of the cost of private education because the Department discriminated against DAB because of his autism.

In New York, both levels of administrative review—a due process hearing before an IHO and an appeal to a SRO—"must be exhausted before an aggrieved party may commence an action in federal court."  McAdams v. Bd. of Educ. of the Rock Point Union Free Sch. Dist., 216 F. Supp. 2d 86, 93 (E.D.N.Y. 2002).  Proper exhaustion is "critical" because the IDEA's administrative scheme "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children."  Taylor v. Vt. Dept. of Educ., 313 F.3d 768, 790 (2d Cir. 2002) (quoting Polera, 288 F.3d at 487).

Congress has specified that exhaustion is not necessary if "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002) (citing Mrs. W. v. Tirozzi, 832 F.2d 748, 756 (2d Cir.1987) (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). The burden of proving the applicability of one of the exceptions rests on the party seeking to avoid exhaustion. Id.

As this Court noted in its prior opinion, the plaintiffs never raised the issue of vaccinations before the SRO. D.A.B., 973 F. Supp. 2d at 354 n.11. The failure to appeal an IHO's decision to the SRO constitutes a failure to exhaust administrative remedies under the IDEA and requires dismissal.[3] See, e.g., R.S. v. Bedford Cent. Sch. Dist., 899 F. Supp. 2d 285, 288 (S.D.N.Y. 2012) (holding that SRO's dismissal of appeal as untimely constituted failure to exhaust administrative

---

[3] The defendants also argue that the plaintiffs' claim should be dismissed because the plaintiffs did not exhaust other available remedies, such as requesting an exemption to the vaccination requirements or appealing to the State Commissioner of Education. However, the defendants cite no cases suggesting that the IDEA exhaustion requirement applies to administrative remedies that are outside of the IDEA administrative process. See 20 U.S.C. § 1415(i)(2)(A)(requiring that parties be aggrieved by administrative findings under that subsection before having the right to bring a civil action). Nevertheless, the Court need not reach this issue because the plaintiffs have failed to exhaust their IDEA remedies.

remedies); M.M. ex rel. J.M. v. New York City Dep't of Educ., No. 09 Civ. 5236, 2010 WL 2985477, *8 (S.D.N.Y. July 27, 2010) (dismissing claim for failure to exhaust due to failure to appeal IHO decision).

Therefore, unless one of the exceptions applies, plaintiffs' claim must be dismissed for lack of subject matter jurisdiction.[4] In this case, the plaintiffs have not argued that any of the exceptions apply,[5] much less carried their burden to prove the applicability of any exception. See Coleman, 503 F.3d at 206 (stating that even if resort to administrative processes "takes time," that does not "equate to an inadequate remedy"). Plaintiffs' claim is thus dismissed without prejudice. See

---

[4] The Court of Appeals for the Second Circuit has been somewhat "equivocal" at times in its discussion of whether the IDEA exhaustion requirement is jurisdictional. Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 203 (2d Cir. 2007). It has cautioned that, in accord with Supreme Court decisions in Eberhart v. United States, 546 U.S. 12, 16 (2005) and Kontrick v. Ryan, 540 U.S. 443, 455 (2004), courts should "carefully distinguish between jurisdictional rules and mandatory claims-processing rules," such as waiver and forfeiture. Coleman, 503 F.3d at 203. Nevertheless, the defendant has not waived its exhaustion argument here, and therefore it is either a jurisdictional bar or an affirmative defense that has been invoked. See Piazza v. Florida Union Free Sch. Dist., 777 F. Supp. 2d 669, 680-81 n.7 (S.D.N.Y. 2011) (discussing developments in light of more recent Supreme Court opinions and splits among lower courts in the Second Circuit about whether exhaustion is an affirmative defense or jurisdictional, and concluding that it need not decide the issue because the defendant had not waived the defense).

[5] Plaintiffs' arguments in their reply brief mostly ignore the defendant's exhaustion argument altogether. They appear to argue that the plaintiffs' failure to obtain an exemption to the vaccination requirement for the 2010-2011 school year was justified because "the Department's own employee informed the Parents that the [Department's] prior refusal to grant such an exemption was still in effect for the 2010-2011 school year." Pl.'s Reply Br. at 3. Even if accepted as true, this argument appears to be directed at the failure to request an exemption and does not excuse the failure to appeal the IHO's decision. The plaintiffs prevented the SRO from considering their arguments with respect to vaccination and how that might have affected the Department's ability to provide a suitable placement for D.A.B. by failing to appeal the IHO's decision.

Cave, 514 F.3d at 250 (directing district court to dismiss without prejudice a claim that the plaintiffs had failed to exhaust).

### III.

For purposes of completeness, the Court notes that even if there were jurisdiction over plaintiff's Section 504 claim, it is without merit.

Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). "A plaintiff may assert a Section 504 claim in conjunction with an IDEA claim on the theory that he has been denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive." C.L. v. Scarsdale Union Free Sch. Dist., 913 F. Supp. 2d 26, 36 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). "The scope of protection under the Rehabilitation Act differs from that under the IDEA." Id. "Specifically, Section 504 offers relief from discrimination, whereas IDEA offers relief from inappropriate education placement, regardless of discrimination." Gabel ex rel. L.G. v. Bd. of Educ., 368 F.

11

Supp. 2d 313, 333 (S.D.N.Y. 2005); see also D.C. ex rel. E.B. v. New York City Dep't of Educ., 950 F. Supp. 2d 494, 517-18 (S.D.N.Y. 2013).

To recover under the Rehabilitation Act, a plaintiff must show (1) that he has a disability for purposes of the Rehabilitation Act, (2) that he is "otherwise qualified" for the benefit that has been denied, (3) that he has been denied the benefits "solely by reason of" his disability, and (4) that the benefit is part of a program or activity receiving Federal financial assistance. Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009); see also D.C., 950 F. Supp. 2d at 518.

Here, it is undisputed that D.B. is disabled and that the school district receives federal financial assistance. However, it is unclear whether plaintiffs can show that D.B. was excluded from school at all. The plaintiffs rejected the proposed placement before receiving the FNR and unilaterally placed D.B. at the McCarton Center. (Ex. C.) The plaintiffs never enrolled D.B. at his designated placement and he was never rejected by that school. Furthermore, D.A.B. stressed at the due process hearing and in her letter to the Department that her objections to the proposed placement were based in large part on the substantive inadequacy of the proposal, such as the 6:1:1 ratio. (Ex. B; Tr. 870.) Nevertheless, even if plaintiffs did intend

12

to enroll D.B. in public school, they cannot show that D.B. was excluded from school "solely by reason" of his disability. 29 U.S.C. § 794(a); Flight v. Gloeckler, 68 F.3d 61, 64 (2d Cir. 1995) (dismissing Section 504 claim because the plaintiff was denied an additional subsidy for modifications to a vehicle due to his "inability to drive").

No reasonable factfinder could conclude that D.B. was prevented from attending the school because of his autism. Even under the plaintiffs' hypothetical assumptions, D.B. would not have been allowed to attend his designated school because he did not have the required vaccinations. Plaintiffs hypothesize that D.B.'s autism prevents him from obtaining the required vaccinations, and therefore the enforcement of this requirement constitutes discrimination. In so arguing, the plaintiffs rely heavily on Honig v. Doe, 484 U.S. 305 (1988), in which the Supreme Court held that a state may not unilaterally exclude mentally disabled students from public school due to dangerous conduct. Id. at 324-25. There is no reasonable comparison between a vaccination requirement (with appropriate medical exceptions) and the exclusion of mentally disabled students. Moreover, Honig dealt exclusively with the Education of the Handicapped Act, a precursor to the IDEA, id. at 309, not with a claim of discrimination under Section 504 of the Rehabilitation Act.

The only Section 504 cases that plaintiffs rely on to argue that the vaccination requirement constitutes discrimination involve sweeping, automatic exclusions of all children with a certain disease.  See New York State Ass'n for Retarded Children, Inc. v. Carey, 466 F. Supp. 479, 486 (E.D.N.Y. 1978) aff'd, 612 F.2d 644 (2d Cir. 1979) (holding that the exclusion of all mentally disabled children with Hepatitis B violated Section 504); Dist. 27 Cmty. Sch. Bd. by Granirer v. Bd. of Educ. of City of New York, 502 N.Y.S.2d 325, 335 (Sup.Ct. 1986) (holding that the automatic exclusion of all children with AIDS would violate the Rehabilitation Act).  By contrast, the Department's vaccination requirement, which allows the possibility of exemptions, is a more limited, generally applicable law intended to limit the spread of contagious disease.  N.Y. Pub. Health Law § 2164; see Carey, 466 F. Supp. at 486 (stating that in contrast to complete exclusion, Section 504 allows "prophylactic measures" to limit the "risk of contagion").  Because all record evidence shows D.B. was not excluded from public school solely because of his autism, the plaintiffs' Section 504 claim is without merit.

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, they are either moot or without merit.  For the reasons explained above,

the plaintiffs' motion for summary judgment on the Section 504 claim is **dismissed without prejudice** for lack of subject matter jurisdiction.  The Clerk is directed to **close all pending motions.**

**SO ORDERED.**

**Dated: New York, New York
       September 22, 2014**
                                        _____/s/_____

                                           **John G. Koeltl
                                        United States District Judge**

15